**FONAR CORPORATION, Plaintiff,**

v.

**MAGNETIC RESONANCE PLUS, INC., and Robert Domenick, Defendants.**

No. 93 Civ. 2220 (CBM).

United States District Court, S.D. New York.

Aug. 2, 1996.

Sullivan & Cromwell by Stuart Meiklejohn, Steven L. Holley, New York City, Shiff & Tisman by Laurence Shiff, New York City, Fonar Corporation by Scott Fields, Mineola, NY, for Plaintiff.

Coudert Brothers by Adam J. Safer, New York City, Klehr, Harrison, Harvey, Branzburg & Ellers by Lateef Mtima, Philadelphia, PA, for Defendants.

## *OPINION*

MOTLEY, District Judge.

### INTRODUCTION

By Order dated March 27, 1996 (hereinafter "the March Order"), this court dismissed plaintiff's copyright and related state law claims for plaintiff's failure to describe its purportedly copyrighted computer software in such a way that would reveal the substance of the protected work. Subsequent to the March Order, defendants moved for costs, attorney's fees and sanctions related to defending against plaintiff's claims and for sanctions concerning plaintiff's improper and untimely request for reargument of the March Order. For the reasons set forth herein, defendants' request related to the underlying claims is stayed and the request related to the motion for reargument is granted.

### FACTS

Although familiarity with the basic facts of the instant proceeding as set forth in this court's opinion, dated March 27, 1996, is assumed, *See Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 920 F.Supp. 508 (S.D.N.Y. 1996), the following is a description of the underlying facts relevant to the motions currently *sub judice.*

Plaintiff Fonar Corporation, (hereinafter "plaintiff"), is engaged in the research, development, production and sale of Magnetic Resonance Imaging (MRI) systems used for medical diagnostic purposes. To maintain these systems, plaintiff has developed "Maintenance Software" for its systems' computers.

The instant action for copyright infringement was commenced in 1993 against defendants Magnetic Resonance Plus and Robert Domenick, the corporation's president, (collectively, "defendants"). Defendants provide maintenance service to the owners of plaintiff's MRI systems and the Complaint alleged that defendants had copied plaintiff's purportedly copyrighted Maintenance Software.

The instant suit was commenced soon after the Second Circuit issued a decision in a collateral proceeding affecting the copyrighted work in this case. In that decision, *Fonar Corp. v. Deccaid Services, Inc.,* 983 F.2d 427 (2d Cir.1993), the Second Circuit reversed and vacated several of the lower court's interlocutory orders enjoining the use of plaintiff's software because such orders relied upon and incorporated plaintiff's cursory definition of this software. As set forth in this court's prior decision in this case, the definition utilized by plaintiff in this collateral proceeding was, for all intents and purposes, identical to that employed by plaintiff in this case. *See* 920 F.Supp. at 510–511 and n. 1.

After a two year pre-trial period during which former counsel for plaintiff was sanctioned for engaging in evasive discovery practices, *See Fonar Corp. v. Magnetic Resonance Plus, Inc.,* 162 F.R.D. 276 (S.D.N.Y. 1995), based upon the Second Circuit's ruling in *Deccaid,* defendants made a motion *in limine* to dismiss plaintiff's copyright claims as too vague to support a claim of copyright infringement.

Through its submissions opposing the motion and at oral argument on the motion, plaintiff did not expand the definition of the software contained in the Complaint in any significant way. 920 F.Supp. at 511. Instead of providing a meaningful definition of the software given the Second Circuit's explicit rejection of the definition plaintiff was attempting to proffer, counsel for plaintiff promised to supply, at the close of trial, a " 'proposed injunction form ... running about 40 pages in length, single-spaced' which would set forth the programs covered by the Maintenance Software definition." *Id.* (quoting record) (alterations in original). It was also admitted that the computer program that purportedly comprised the copyrighted work was over 2,000 pages long, even though only a tiny fraction of such work was actually filed with the copyright office. Furthermore, plaintiff's counsel admitted that plaintiff could not point to the specific programs of the maintenance software that were allegedly infringed. *Id.* at 519 (citing record).

Subsequent to the oral argument, defendants' counsel noted that deposition testimony appeared to contradict the definition of the maintenance software that plaintiff had proffered throughout the case. *Id.* at 511. In order to allow plaintiff the opportunity to clarify the issues regarding the apparent contradiction, the court converted defendants' motion to one for summary judgment. *See* Order, dated November 28, 1995.

Plaintiff submitted the following "evidence" in an attempt to avoid summary judgment: 1) a list of purported "directories" of the computer programs; 2) a set of "print screens" that supposedly showed that defendants had copied the software; and 3) an affidavit from one of plaintiff's employees. These submissions failed to provide a more meaningful definition of the software.[1] Plaintiff also submitted a copy of the copyright registration itself, although plaintiff had admitted that this registration contained only a fraction of the programs that allegedly comprised the software.

Based upon the cryptic nature of the definition of the software plaintiff chose to proffer even to the eve of trial—a definition the Second Circuit had already described as "most elusive," *Deccaid,* 983 F.2d at 429—the court found that plaintiff had failed to raise a genuine issue of material fact in relation to the basic elements of its copyright case: i.e., ownership of a valid copyright and copying of the constituent elements of the copyrighted work. 920 F.Supp. at 516–520. Accordingly, plaintiff's claims of copyright infringement and the related state law claims of unfair competition were dismissed. Trial of defendants' anti-trust counterclaims, over which the court still retains jurisdiction, is scheduled for late October of this year.

By motion dated April 10, 1996, defendants moved, pursuant to this court's inherent authority and 28 U.S.C. § 1927, for attorney's fees, costs and sanctions against plaintiff "for this baseless and harassive litigation and for pursuing the litigation in bad faith." (Defs.'

---

1. Indeed, as this court previously held, the directories were "cryptic" and "meaningless to the lay eye," and the print screens "show[ed] only line after line of computer language text mixed with clusters of meaningless terms." 920 F.Supp. at 511–512 (citations omitted).

Not. of Mot., dated April 10, 1996, at 1.) Two days later, by motion dated April 12, 1996, defendants also moved, pursuant to 17 U.S.C. § 505 and Fed.R.Civ.Proc. 54(d), for attorney's fees and costs for the same reasons set forth in the April 10, 1996 notice of motion. (Defs.' Not. of Mot., dated April 12, 1996, at 1.)

By motion dated April 29, 1996, counsel for plaintiff, who, at the time was Laurence Shiff, Esq., of the law firm Shiff and Tisman,[2] requested certification, pursuant to Fed. R.Civ.Proc. 54(b), to permit entry of a final judgment against plaintiff to allow it to appeal the March Order.

By letter dated May 10, 1996, D. Stuart Meiklejohn of the law firm of Sullivan & Cromwell informed the court that Sullivan & Cromwell had been retained by plaintiff "to replace Shiff & Tisman, the law firm that has been lead counsel to [plaintiff] since December 1994." Mr. Meiklejohn requested an extension of time to respond to defendants' pending motions for attorney's fees and other relief, and for an extension of time to file plaintiff's reply to defendants' opposition to plaintiff's 54(b) motion. This request was granted and a briefing schedule was established by the court. *See* Order, dated May 10, 1996.

On May 20, 1996, Sullivan & Cromwell submitted a memorandum of law which set forth its opposition to defendants' motion for attorney's fees and other relief as well as plaintiff's arguments in reply to defendants' opposition to the 54(b) motion. Included in this memorandum, as Point I, was a request that the court reconsider the March Order. (*See* Plf.'s May 20, 1996 Mem.) Admitting that plaintiff "utilized a shorthand reference in the Complaint … that was not fully descriptive of the software covered by [plaintiff's] Copyright Registration and thus perhaps confusing," plaintiff submitted an affidavit which purported to "eliminate any doubt on this subject" by "detailing the programs encompassed" by plaintiff's purportedly copyrighted work. (*Id.* at 4–5.)

After receiving plaintiff's memorandum with request for reconsideration, defendants moved *ex parte* by order to show cause to strike plaintiff's request for reconsideration and for sanctions against plaintiff for seeking such relief in a procedurally improper manner. The original order to show cause, which was signed by the Hon. John F. Keenan on May 24, 1996, directed service of opposition and reply papers and set the matter down for a hearing on June 5, 1996, one day before this court had previously scheduled oral argument on the pending motions.

After defendants' order to show cause was signed by Judge Keenan, this court issued an order denying plaintiff's request for reconsideration "because it was not made through a formal motion as described in and required by Local Rule 3 of the Southern District of New York and it was not made within 10 days of the docketing of the [March Order], as required by Local Rule 3(j)." *See* Order, dated May 28, 1996. In addition, because Local Rule 3(j) bars the filing of affidavits in support of a motion to reargue "unless directed by the court," the court expressly denied plaintiff the opportunity to file the affidavit submitted with the request for reconsideration. *Id.* Lastly, the court granted plaintiff's request under Rule 54(b) to permit entry of a final judgment against plaintiff on its copyright and related state law claims. *Id.*

At oral argument on the still pending motions for attorney's fees and related claims, the court reiterated the view that the request for reconsideration was improperly filed and granted defendants' request for reasonable attorney's fees related to opposing the request for reconsideration. (R. 6/6/96 at 6–7). Subsequent to the oral argument, defendants submitted an application for attorney's fees

---

2. Mr. Shiff submitted this motion as "Of Counsel" to Scott Fields, Esq., plaintiff's in-house counsel, although throughout the case Mr. Shiff has identified himself both as counsel for plaintiff *and* as "Of Counsel" to Mr. Fields. (*Compare, e.g.*, Joint Pre–Trial Order (identifying Shiff and Tisman and Mr. Shiff as counsel for plaintiff)), *with* Affidavit of Laurence Shiff, dated May 20, 1996, in opposition to Defs.' Mot. for Attorney's Fees and Sanctions (describing Shiff and Tisman's relationship to this case and to plaintiff as "counsel to Scott Fields, Esq., counsel of record to [plaintiff].").

related to the request for reconsideration and, on June 21, 1996, plaintiff submitted a memorandum of law in response to this application which opposed the application in both form as well as on the merits, which the court had already determined.

Accordingly, the following discussion addresses the pending motions for attorney's fees, sanctions and costs with regard to defendants' expenses in litigating and obtaining the dismissal of plaintiff's copyright and related claims. In addition, the court addresses the arguments raised in plaintiff's memorandum of law dated June 21, 1996 in opposition to the award of attorney's fees related to the request for reconsideration.

## ANALYSIS

### I. DEFENDANTS' MOTIONS FOR COSTS, ATTORNEY'S FEES AND SANCTIONS ASSOCIATED WITH DEFENDING AGAINST PLAINTIFF'S COPYRIGHT AND RELATED CLAIMS.

■ As set forth above, defendants have moved for costs, sanctions and attorney's fees incurred in the defense of this lawsuit. At the June 6, 1996 oral argument, the court indicated that the request for attorney's fees related to the litigation to date would be considered at the close of the case. (R. 6/6/96 at 7–8.) Counsel for defendants intimated that the cost of the litigation had driven defendants out of business and asked the court to consider the request for costs and attorney's fees at this juncture in the case. (*Id.* at 8.) Although the court heard oral argument on defendants' request related to the cost of defending against plaintiff's underlying case, counsel for defendants' statements made at oral argument concerning the financial viability of its clients were cursory and unsupported by any sworn statement by an individual with personal knowledge of these facts. Accordingly, the request for immediate consideration of the motion for costs, sanctions and attorney's fees related to the underlying case is denied and the request for such an award shall be stayed pending plaintiff's appeal, if any, of the March Order (provided it is prosecuted expeditiously) and a final decision in this case on defendants'

underlying counterclaims. *Agee v. Paramount Communications, Inc.,* 869 F.Supp. 209, 210 (S.D.N.Y.1994) (staying request for attorney's fees on underlying action pending decision on appeal); *Cf. Id.* at 212 (rejecting plaintiff's attempt to avoid the imposition of fees because of cursory allegations concerning financial status).

### II. DEFENDANTS' REQUEST FOR ATTORNEY'S FEES CONCERNING PLAINTIFF'S IMPROPER REQUEST FOR REARGUMENT.

Defendants have requested sanctions against plaintiff's counsel for filing an untimely request for "reconsideration" of the March Order in the context of a Memorandum of Law addressing other, previously raised issues. Plaintiff argues that its request was proper and filed in good faith.

### A. The Substance of Plaintiff's Request.

■ Plaintiff argues strenuously that the request it made was actually a request for reconsideration of the court's interlocutory order dismissing plaintiff's claims. Although it is correct that, consistent with the "law of the case" doctrine, it is within the court's equitable powers to *reconsider* any interlocutory order until a final judgment is rendered in the case, Fed.R.Civ.Proc. 54(b), it is also within the court's discretion to view plaintiff's request for reconsideration as a request for reargument. *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992). The critical difference between these two motions is that a request for reconsideration may generally be made at any point until the entry of a final judgment, whereas Local Rule 3(j) requires that a request for reargument must be made within ten days of the docketing of the order to which the motion relates.

■ Addressing the substance of the motion, the purported request for reconsideration was not based upon grounds considered relevant to such a request, however: i.e., (1) that there had been " 'an intervening change of controlling law,' " (2) that there was some

new evidence available that was not available at the time of the prior decision, or (3) that there is a " 'need to correct a clear error or prevent manifest injustice,' " *Id. Virgin Atlantic Airways,* 956 F.2d at 1255 (citation omitted). None of these bases has been established. Rather, plaintiff chose simply to reiterate arguments that had been made to the court previously: i.e., that the Second Circuit's prior ruling related to plaintiff's copyright was inapposite to the instant action, that defendants allegedly had notice of the contents of the software and thus the definition proffered by plaintiff was irrelevant to establishing plaintiff's case, that plaintiff's copyright deposit was appropriate, and that defendant had engaged in wholesale copying of the allegedly copyrighted software. Each of these issues was addressed by the court in its prior decision. Given the fact that plaintiff's new counsel has failed to raise any arguments that were not before the court upon initial consideration of the motion for summary judgment, the court sees no reason to overturn its prior decision. Moreover, plaintiff's argument that its request was actually one for reconsideration and not reargument is without any support in the record or the law.

## B. Appropriate Sanctions.

As plaintiff properly notes, defendants' request for sanctions related to the filing of the motion for reargument fails to set forth the statutory or other basis upon which the request is made. (Plf.'s June 21, 1996 Mem. at 6.) Like plaintiff, the court assumes that defendants seek sanctions under this court's inherent authority. (*Id.*) The court now turns to consider what would be the appropriate sanction in this case.

■■■ " 'Courts of justice are universally acknowledged to be vested, by their very creation,' " with certain inherent powers. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Anderson v. Dunn,* 6 Wheat 204, 227, 5 L.Ed. 242 (1821)). Although the inherent powers of the court must be "exercised with restraint and discretion," *Chambers,* 501 U.S. at 44, 111 S.Ct. at 2132, a "primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45, 111 S.Ct. at 2132–33. In exercising this discretion the court is free to impose the "particularly severe sanction" of dismissal of a suit for improper litigation conduct, but may also levy the " 'less severe sanction' of an assessment of attorney's fees" as an exercise of the court's inherent power when faced with such conduct. *Id.* at 45, 111 S.Ct. at 2133 (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)).

■■■ Through the exercise of its inherent power the court may award reasonable attorney's fees to the prevailing party when the opposing party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)); *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir.1991) (same); *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986) (same), *cert. denied sub nom., County of Suffolk v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). *See also Milltex Industries Corp. v. Jacquard Lace Co., Ltd.,* 55 F.3d 34, 38 (2d Cir.1995) (holding sanctions not appropriate "unless the challenged actions are (1) 'entirely without color' and (2) motivated by 'improper purposes' such as harassment or delay.") (quoting *Oliveri,* 803 F.2d at 1272) (alterations in original). A finding of bad faith must be supported by "clear evidence" that the opposing party's actions were taken to harass, delay the proceedings, or for otherwise inappropriate reasons. *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2d Cir.1986).

■■■ Accordingly, the court finds that the following circumstances, taken together, clearly reveal counsel for plaintiff's improper motivation for filing the motion for "reconsideration".

¶ First, the request was clearly untimely, filed almost two months after the March Order.

¶ Second, the request for reargument—which plaintiff carefully termed a request for "reconsideration" in order to sidestep the local rules—was contained within papers that were supposed to serve both as opposition papers to defendants' motions for sanctions as well as reply papers with regard to plaintiff's 54(b) motion.[3] Such motion practice clearly violates both Rule 7 of the Fed.R.Civ. Proc. as well as Local Rule 3 of this District. Anyone admitted to practice in this court is required to know and abide by such basic rules.

¶ Third, counsel for plaintiff had previously requested an extension of time to file the opposition and reply papers with regard to the other pending motions but never mentioned the possibility that additional relief would be sought. Counsel for plaintiff could have easily apprised the court of its intent to make this request or could have even sought leave to file a request for reconsideration upon proper support and justification, which would have allowed the court to consider the request and establish a briefing schedule that might have been appropriate were such relief granted. This type of motion practice has the potential to disrupt the court's calendar and prejudices the opposing party's ability to defend itself.

¶ Fourth, plaintiff's request was not inadvertent or innocent. Rather, it was prominently presented as plaintiff's first argument in the memorandum, filling almost half the document.

¶ Fifth, and perhaps most important, the arguments plaintiff proffered in support of the motion for "reconsideration" were the same arguments made before this court on the original summary judgment motion. Indeed, plaintiff's memorandum of law actually cites to both the affidavit of prior counsel submitted in opposition to the original motion as well as the Pre-Trial Order, both of which were before the court on the original motion for summary judgment. (*See* Plf.'s May 20, 1996 Mem. of Law, at 4 and 7.)

¶ Sixth, in clear violation of Local Rule 3(j) which requires leave of court when a party wishes to file an affidavit in support of a motion for reargument and without setting forth any justification why plaintiff had not submitted such information prior to this court's March decision, plaintiff, admitting that the definition of the software utilized by plaintiff was "perhaps confusing", submitted an affidavit which purported to "eliminate any doubt on this subject" by "detailing the programs encompassed" by plaintiff's purportedly copyrighted work. (Plf.'s May 20, 1996 Mem. at 4–5.) In other words, plaintiff's claims were dismissed on the ground that plaintiff had not described its purportedly copyrighted work in such a way that would raise a genuine issue of material fact related to the elements of plaintiff's case. Two months later, without providing any reason why such information was not provided earlier, plaintiff, in support of its "request for reconsideration", submitted an affidavit which purported to describe the software.[4]

In the instant case, the facts set forth above make it obvious that plaintiff's ill-ad-

---

**3.** Counsel for plaintiff now argues that "[u]nlike reported cases involving violations of Civil Rule 3(j), in which a party actually files a motion for the purpose of rearguing a prior ruling of the court, [plaintiff] included a suggestion of reconsideration in a memorandum that necessarily addressed the propriety of the Court's prior Order in the context of other pending motions." (Plf.'s June 21, 1996 Mem. at 4.) Plaintiff continues:

"All that [plaintiff] did was suggest that the Court reconsider the Order based on legal and factual assertions contained in [plaintiff's] memorandum opposing defendants' motions for sanctions and attorneys fees and supporting Fonar's request for Rule 54(b) certification. That suggestion was not a motion for reargument and so was not governed by Civil Rule 3(j)." (*Id.*) (footnote omit-

ted). It strains reason, however, to think that plaintiff can avoid the requirements of the rules and the penalties for their violation by employing such doublespeak: that a motion is not a motion and thus not governed by the Federal and Local Rules if a party makes a strategic decision not to file it properly.

**4.** The court rejected this affidavit because plaintiff had not obtained leave of court to file it as required by Local Rule 3(j) of the Southern District of New York. *See* Order, dated May 28, 1996. Subsequently, plaintiff requested that the court permit the affidavit to be filed in order for it to be a part of the record in this proceeding. (*See* Letter of D. Stuart Meiklejohn, dated July 10, 1996). Defendants have asserted that this request is an attempt to place the affidavit before

**450**

vised and procedurally improper motion practice related to the request for reargument was carried out with the sole purpose of delaying the proceeding so as to postpone not only the trial on defendants' counterclaims but also the court's consideration of defendants' motion for attorney's fees. Plaintiff's counsel may believe in the arguments proffered, but such arguments are appropriately made before the court of appeals, not through an untimely and procedurally infirm motion. "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). The circumstances surrounding plaintiff's submission of the request for reargument—its untimely nature, the failure of plaintiff's counsel to advise the court or opposing party of its intent to interpose the request even when it had the clear opportunity to do so, the utterly baseless and repetitive nature of the motion, the unjustified and improper supporting affidavit—all lead the court to the inescapable conclusion that the purposes of the request were to delay the proceedings and to harass defendants. Accordingly, defendants are awarded attorney's fees for the cost of defending against the request for reargument. *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.,* 132 F.R.D. 342, 346 (E.D.N.Y.1990), *aff'd,* 956 F.2d 1245 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992).

█ In support of their request for attorney's fees related to the request for reargument, counsel for defendants has submitted an application setting forth the amount of attorney time spent defending against the request for reargument. Although plaintiff alleges that defendants have not distinguished between that time spent responding to the reargument request and that time spent addressing other, legitimate issues raised by plaintiff, it appears that counsel for

defendants has indeed done so. (Defs.' App. for Atty's Fees, at 1 n. 1.) Defendants' application has two other problems, however: it fails to substantiate the hourly rate assessed for each attorney's labor and it fails to allege that the records reflect the contemporaneous billing records maintained by the firm. *See, e.g., New York Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–1148 (2d Cir.1983). Accordingly, in order for the court to award defendants reasonable attorney's fees, counsel for defendants must submit a new, fully substantiated fee application.

### CONCLUSION

For the reasons set forth above, defendants' motions for costs, attorney's fees and sanctions related to the defense of the underlying copyright claims is stayed pending a resolution of the trial on defendants' counterclaims and the appeal of the March Order. Defendants' request for sanctions related to the filing of plaintiff's request for reargument is granted to the extent that defendants are awarded counsel fees for defending against this request.

---

the court of appeals on the appeal of the March Order. (*See* Letter of Adam J. Safer, dated July 11, 1996.) The court will allow the affidavit to be filed simply for the purpose of including it as a part of the record in this case *as it relates to the*

*instant decision.* Certainly an attempt to place a document before the court of appeals which was not before this court when the March Order was issued is highly improper and the court hopes counsel for plaintiff was not attempting to do so.